BARNETTE, Judge.
The plaintiff, Sewerage and Water Board of New Orleans, filed this concursus proceeding pursuant to LSA-R.S. 38:2243 citing the prime contractor and its surety, the subcontractors, and other claimants. Among the claimants cited was Great Lakes Dredge & Dock Company. In its petition for concursus the plaintiff asserted alternatively a claim against Great Lakes for damages which it alleged resulted from certain improper workmanship in the performance by Great Lakes of its work under a subcontract. Great Lakes filed various motions and exceptions, including an exception of no cause or right of action for damages. The trial court maintained the exception of no cause or right of action for damages and to that extent dismissed plaintiff’s suit against Great Lakes Dredge & Dock Company. The plaintiff has appealed.
The appellee has answered the appeal in this court and complains of the failure of the trial court to maintain its other exceptions including prescription and prays that in the event this court does not affirm the judgment dismissing plaintiff’s damage claim on the exception of no cause or right of action, that it then maintain the other exceptions and dismiss or remand as may be in accordance with law.
The material facts upon which the issues presently before the court are founded, are briefly as follows:
The Sewerage and Water Board of New Orleans, a public agency entered into a *416 public works contract with the prime contractor, Jack Sanders, doing business as Laguna Construction Company, for a major construction project. It is alleged that the contractor (Sanders) defaulted and failed to resume operations after formal demand, whereupon plaintiff took possession of the construction project and proceeded toward completion of the work at its own expense. Notice of default was recorded in accordance with statutory requirements.
It is alleged that under the provisions of the contract certain backfill operations were specified in connection with a pipeline crossing of the Mississippi-Gulf Outlet, for which work the prime contractor engaged a certain named subcontractor (Joint Venture) who in turn engaged Great Lakes Dredge & Dock Company to perform the work. It is because of the alleged improper and unworkmanlike manner in which this work was done that plaintiff seeks damages from Great Lakes.
In its petition for concursus the plaintiff has named several claimants who filed claims within 45 days from the filing of notice of default. Among these is Great Lakes, whose claim is $173,623.25. Certain other claimants are also named who had either filed suit on claims or given notice of claims. Joint Venture was made a party defendant to assert whatever claims it may have.
The proceeding was brought under the provisions of LSA-R.S. 38:2243 which is as follows:
“If at the expiration of the forty-five days any filed and recorded claims are unpaid, the governing authority shall file a petition in the proper court of the parish where the work was done, citing all claimants and the contractor, subcontractor, and surety on the bond and asserting whatever claims it has against any of them, and shall require the claimants to assert their claims. If the governing authority fails to file the proceeding any claimant may do so.
“All the claims shall be tried in con-cursus and the claims of the claimants shall be paid in preference to the claims of the governing authority.”
The plaintiff alleged that Joint Venture undertook the backfilling operation under subcontract with Sanders, the prime contractor, and in turn engaged Great Lakes. Alternatively it alleged a subcontract by Great Lakes direct from Sanders. It alleged Joint Venture’s liability to it for the alleged damages to the pipeline crossing and then alleged in a separate article (XVII) as follows:
“Plaintiff alleges on information and belief that defendant, Great Lakes, in the backfilling of the said pipeline crossing, whether under a subcontract with the Joint Venture or with Sanders, caused damage to said pipeline crossing by failing to perform said work in a proper and workmanlike manner and by failing to adequately protect said pipeline; and is therefore liable to plaintiff in solido with the- Joint Venture and its surety, for the damages to said pipeline crossing in the event that plaintiff is judicially determined to bear the risk of loss therefor, and alternatively at least to the extent of any claim by Great Lakes against plaintiff or against funds in the hands of plaintiff. Plaintiff further desires to and does hereby expressly reserve all its rights to pursue claims for said damage against Great Lakes and the vessel ‘Duplex,’ in a Court of Admiralty.”
Its petition concludes with a prayer that all claimants be cited to answer and assert contradictorily their claims arising out of the project against the funds in its hands and that the respective rights of all parties be judicially determined. It then prays for judgment against Sanders and his surety for a sum in excess of a million dollars with attorney’s fees and then prays:
“Plaintiff further prays in the alternative, should it be judicially determined that the risk of loss of said pipeline crossing of the Mississippi River Gulf Outlet, *417 be imposed on plaintiff, that there be judgment in favor of plaintiff and against Great Lakes Dredge and Dock Company and/or Anthony Vullo and Coastline, Inc., a Joint Venture and its surety, State Automobile Casualty Underwriters, in solido, for the damages occasioned to said crossing, or in the further alternative, at least to the extent of any claims made by Great Lakes Dredge & Dock Company against funds in the hands of the plaintiff, and that there be reserved to plaintiff all rights to proceed against Great Lakes Dredge & Dock Company or its vessel ‘Duplex’, for such damages, in a Court of Admiralty.”
The exception of no cause or right of action is predicated on three points, namely:
1. That the petition does not allege any facts upon which an action ex delicto can be maintained against Great Lakes and that its allegations in Article XVII (see above) are mere conclusions of the plaintiff.
2. That no contractual obligation is alleged upon which plaintiff can assert its claim for damages.
3. That the claim for damages is outside the scope and purview of a con-cursus proceeding.
The judgment maintaining the exception refers to “reasons orally assigned.” • The reasons are not recorded and therefore we do not know upon which of the above points the exception was maintained. We will address ourselves first to point number 3.
The use of concursus procedure is not new to the jurisprudence of Louisiana, but until the adoption of the Code of Civil Procedure in 1960 (effective January 1, 1961) the rules of procedure were not clearly defined. The introduction to LSA-C.C.P. Title X entitled “CONCURSUS PROCEEDINGS” clearly states the intent that the procedure be adopted in its broadest form which eliminates the restriction of the “strict interpleader” concept that the party invoking the procedure is a mere stakeholder having no further claims to nor interest in the fund or property subject of the action. We quote from the “Introduction” in pertinent part:
“The fountain-head of Anglo-American interpleader is the old common law writ of the same name. Chafee, Cases on Equitable Remedies 1 (1938). But it was in the chancery courts that the principles of interpleader were developed, and the use of the remedy became common. Limitations on the use of the equitable remedy were imposed by four technical requirements: (1) the same thing, debt, or duty had to be claimed by all the parties interpleaded; (2) all of the claims had to be derived from a common source; (3) the plaintiff could not claim any interest in the subject matter; and (4) the plaintiff must have had no independent liability to any defendant, but must be a mere stakeholder. 4 Pomeroy, Equity Jurisprudence (5th ed.) 906 et seq. (1941). These restrictions curtailed the usefulness of interpleader to such an extent that the equitable bill in the nature of interpleader was developed to provide a remedy where the plaintiff claimed something himself, or denied liability in whole or in part, or where the defendants claimed different amounts.
“ ‘The most modern and liberal method of obtaining interpleader to be found’ is Fed. Rule 22, supplementing and broadening 28 U.S.C. § 1335. 1 Moore’s Federal Practice (2d ed.) 3007 (1948). It removes the technical restrictions on inter-pleader by combining it with the bill in the nature of interpleader.
“The articles in this Title: (1) codify those jurisprudential rules on concursus procedure which have been found to be useful and workable; (2) broaden the base of the procedural remedy by borrowing some of the broad and flexible principles of federal interpleader; (3) provide workable substitutes for two of the prior rules which experience has proven to be unworkable; and (4) provide, so *418 far as practicable, a single set of rules to govern concursus procedure regardless of the use to which it may be put.”
The first article under Title X is 4651 and defines the proceeding. The official comments under that article are as follows:
“No code or statutory provision heretofore has defined concursus, and no adequate definition has been provided by the jurisprudence of the state. The definition of the term in the above article is broad enough to embrace all recognized-uses of the proceeding.” (Emphasis added.)
Article 4652 provides in pertinent part:
“Persons having competing or conflicting claims may be impleaded in a concursus proceeding even though the person against whom the claims are asserted denies liability in whole or in part to any or all of the claimants, and whether or not their claims, or the titles on which the claims depend, have a common origin, or are identical or independent of each other.” (Emphasis added.)
The pertinent part of the official comments following this article are:
“(a) The first paragraph of this article removes the jurisprudential limitations on the remedy made possible when La. Act 123 of 1922 introduced the concept of interpleader, and thus paved the way for the recognition of all of the limitations on interpleader in the common law. See American Surety of New York v. Brim, 175 La. 959, 144 So. 727 (1932). The language of this paragraph is based on Fed. Rule 22(1), which combines interpleader with the bill in the nature of interpleader and removes the former limitations and restrictions on the use of the remedy.
“Under the first paragraph of the above article, the remedy is no longer limited to a stakeholder, or to an obligor who admits his indebtedness but does not know to whom a fund in his hands should be distributed. The remedy may now be used not only to prevent multiple liability, but to prevent multiple litigation, and thus may be used by a person against whom multiple claims are asserted, although liability on some or all of these claims is denied.” (Emphasis added.)
The codal provisions on concursus proceedings apply to such proceedings instituted pursuant to LSA-R.S. 38:2243. See LSA-C.C.P. art. 4661.
The above-quoted articles and comments and LSA — R.S. 38:2243 clearly reflect the intention that concursus proceedings in Louisiana after January 1, 1961, be broad in their scope and not subject to the restrictions which would deny to the party invoking the procedure the right to assert his own claims or to deny liability in whole or in part.[1]
Appellee has quoted from Seal v. Gano, 160 La. 636, 107 So. 473, 474 (1926), as follows:
“It is a special remedy afforded a certain class of creditors for the concurrent enforcement of their claims and to regulate their rights as between themselves and against a contractor doing public work, and the surety on his bond.” (Emphasis added.)
Also cited are Mahoney v. Louisiana Highway Commission, 154 La. 383, 97 So. 582 (1923); and John W. Hood & Co. v. Board of School Directors, 210 F. 384 (E.D.La.1914). Relying upon these authorities, ap-pellee argues that the plaintiff is without basis in law to seek an affirmative judgment for damages against Great Lakes.
If an implication can be drawn from the cases cited to support appellee’s argument, which we do not concede, they must be reexamined in the light of the later articles of the Code of Civil Procedure and their declared intent.
*419 LSA-C.C.P. art. 4656 provides that no exceptions or responsive pleadings may be filed to the answer of a defendant. Because of this restriction plaintiff argues that it must anticipate the claims of the defendant and assert its counterclaims or be thereafter precluded from asserting them. There is merit in this contention.
We therefore hold that plaintiff’s claim for damages against Great Lakes arising out of the construction project which gives rise to all the claims involved in this proceeding is not beyond the scope and purpose of the concursus proceeding. The exception of no cause or right of action cannot therefore be maintained on this point.
We will now address ourselves to points 1 and 2 of the exception.
We agree with appellee that plaintiff’s petition, particularly Article XVII, fails to allege any contractual basis for a claim for damages; but more importantly, all its allegations are mere conclusions of law. There are no allegations of fact specifying in what respect Great Lakes was negligent in its operations or in what respect it failed to perform its work in a proper and workmanlike manner or to protect adequately the pipeline. The exception of no cause or right of action should therefore be maintained on these points. However, the grounds of the objection upon which the exception is pleaded may be removed by amendment of the petition and the court shall order such amendment in accordance with the provisions of LSA-C.C.P. art. 934.
The appellee has attempted to bring before this court by answer to the appeal its motion to strike the allegations of Article XVII of the petition, the exceptions of prescription and vagueness, and the question of timeliness and necessity of the concursus proceeding.
Answer to the appeal is authorized by LSA-C.C.P. art. 2133 when the appellee “ * * * desires to have the judgment modified, revised, or reversed in part * * The judgment appealed is limited to the exception of no cause or right of action; it does not adjudicate the issues raised by the exceptions of prescription and vagueness or the question of timeliness and hence, assuming arguendo that a judgment on those issues would be appealable, there being no such judgment there is none to modify, revise or reverse on these exceptions. The issue raised by the motion to strike, namely, that the allegations and demand for damages in Article XVII are “not within the scope and purview of the concursus proceeding,” is one of the issues raised by the exception of no cause or right of action, which we discussed above and decided in the appeal of the judgment maintaining the exception of no cause or right of action.
We decline to consider the other issues which the appellee has attempted to get before this court through its answer to the appeal. They are still pending before the court below and will be disposed of according to law on remand without prejudice to either party.
For the foregoing reasons the judgment maintaining the exception of no cause or right of action and dismissing plaintiff’s suit for damages against Great Lakes Dredge & Dock Company is reversed insofar as it dismisses plaintiff’s suit for damages. It is amended insofar as it maintains the exception of no cause or right of . action by ordering the plaintiff, Sewerage and Water Board of New Orleans, to amend its petition within a time to be fixed by the trial court in accordance with the provisions of LSA-C.C.P. art. 934 and as thus amended it is affirmed.
Further ordered that the case be remanded to the trial court for further proceedings according to law and in conformance with the views herein expressed.
The appellee, Great Lakes Dredge & Dock Company, is cast for cost of this appeal.
Reversed in part; amended and affirmed in part; remanded.

. See also Sarpy, Concursus: Interpleader in Louisiana, 35 Tul.L.Rev. 531 (1960-61).